GI of Pago Pago, Plaintiff

v.

MAAELE of Pago Pago, Defendant

No. 26-1949

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Matai Name: "Mageo" of Pago Pago]

August 26, 1949

A. A. MORROW, *Chief Justice;* TIUMALU, *District Judge;* and PULETU, *District Judge.*

DECISION

Heard at Fagatogo August 9, 10, 11, 1949.
Meauta for Gi; Viavia for Maaele.

MORROW, *Chief Justice.*

The right to the succession to the matai name Mageo of Pago Pago is for determination in this proceeding. Maaele filed his application with the Registrar of Titles to be registered as the holder of the title. Gi filed an objection to the proposed registration and became a candidate for the name. Hence this litigation. Sec. 926 of the A. S. Code prescribes the requirements for eligibility to hold a matai name. We find from the evidence that each of the candi-

dates meets these requirements and is eligible for registration as a matai.

Sec. 933 of the Code provides:

"In the trial of matai name cases, the High Court shall be guided by the following in the priority listed:

(a)  The wish of the majority or plurality of the family;

(b)  The forcefulness, character, personality and capacity for leadership of the candidate;

(c)  The best hereditary right in which the male and female descendants shall be equal in the family where this has been customary, otherwise, the male descendant shall prevail;

(d)  The value of the holder of the matai name to the Government of American Samoa."

The candidates filed petitions with the court purporting to be signed by various members of the Mageo family in support of their respective candidacies. There were 169 signatures on Gi's petition and 140 on Maaele's. Thirty-three of the purported signers on Gi's petition live in Upolu. The petition was apparently sent to Upolu for their signatures but there was no evidence whatsoever that any of their purported signatures were genuine. It is apparent from an inspection of the 33 signatures that many of them were written by the same hand. Mr. Manuel, Cashier of the Bank of American Samoa and a handwriting expert, testified that in his opinion 16 or 17 of them were not genuine. No one testified that he saw any of the signatures written or that they were genuine. As far as the evidence goes every one of the 33 signatures might have been written by a person or persons other than those whose signatures they purported to be. In view of the total lack of evidence as to the genuineness of the 33 signatures and the affirmative evidence that 16 or 17 of them were written by the same hand it is our conclusion that we cannot count them in determining the wish of the majority of the family.

We believe that those 33 should not be counted for another reason. They are merely descendants of Upolu people who were related to Mageo Kini before he was brought from Upolu and given the Mageo title in Tutuila. The bestowal of a Tutuila title upon a young man brought from Upolu does not make all of his former relatives in Upolu and their descendants members of his matai family in Tutuila. Such people in Upolu do not render service to the title nor do they live in the family in Tutuila. They are merely related to the man who holds the title, but they are not related to the title.

Exclusive of the 33 Upolu names, Maaele objected to 39 names on Gi's petition on the ground that they were not members of the Mageo family. Gi objected to 59 names on Maaele's list claiming likewise that they were not members of the family. We believe that the evidence preponderates in favor of the view that all of the 140 signers on Maaele's list are members of the family and that all of the signers on Gi's petition (excluding the purported 33 from Upolu which we cannot count) are also family members. Counsel for Maaele asked the court to count the names of family members who signed Maaele's original application to the Registrar of Titles to have him registered as the Mageo. That we cannot do except in the case of Alofaituli. . . . There was no proof that the signatures on such application other than Alofaituli's were genuine.

We conclude from the evidence and our finding that the 33 purported signatures from Upolu on Gi's petition must be excluded in determining the wish of the family, that a majority favor Maaele to hold the Mageo title and we so hold. Maaele prevails over Gi on the first issue.

In view of our findings on the other three issues, as will appear later in this opinion, it may be stated that the decision would be the same whether we counted the 33 purported signatures from Upolu or not. A candidate who

prevails on the second, third and fourth issues must be awarded the title over a candidate who prevails on the first issue only. See *Maile, Pua & Epati v. Faaaliga Sii*, No. 21-1949 (Am. Samoa). It is obvious from Sec. 933 supra that the court must give more weight to the second, third and fourth issues combined than to the first issue relating only to the wish of the majority or plurality of the family.

Gi testified that he was 59 years of age. He speaks a little English. He completed the third grade in school. Gi spent about six months of his youth in the United States as a member of a siva dancing team. During that time he earned about $15.00 a month and received free board and clothing. He has plantations. He has held the Gi title for about 30 years. For a number of years he was a policeman at the Samoan Hospital but was discharged, apparently because of failure to get to his work on time. He has been the Pulenuu of Pago Pago three times. Gi catches fish which he sells. He has income from his plantations and from Samoan curios. At one time he testified that his total income was between $300.00 and $400.00 a month. At another time he said it was between $30.00 and $40.00 a month. In one part of his testimony he said that he was selected by the family to hold the title Mageo; in another part that the vote was in favor of Maaele. When his inconsistent statements were called to his attention he replied "Some of my answers are correct and some I answered too fast." Gi is obviously in his declining years. He testified that he went to the United States in 1903 or 1904. Poi, one of the witnesses, who went with him, testified that they went in 1915. Gi testified that at the time of the trip he was 20 or 21. If he is 59 years old now as he says and was 20 or 21 when he went he obviously missed the date of his departure by a good many years when he said that it was in 1903 or 1904. We think the fact that he "talked too fast" and was obviously confused in other parts of his testimony is a clear

indication that he is in his declining years. His capacity for leadership is waning.

Maaele is 58 years old. He spent 11 years in the United States on the vaudeville stage as a dancer. He had an income of about $150.00 a week as such, not counting extra earnings of as much as $50.00 a week for non-scheduled dances. He returned to American Samoa from the United States in 1929. He has been the leading young man in the Mageo family for the past four or five years. He speaks English. Maaele completed the fourth grade in school. He has worked for the Public Works Department as a carpenter. During the war he was a diver in the service of the Navy. He also worked as foreman of a group of stevedores. He has plantations and is a preacher. He makes Samoan curios which he sells. His income ranges from $400.00 to $500.00 a year. He was not confused in his testimony as was Gi. He is obviously an alert and capable Samoan. From the evidence and our observation of the candidates at the hearing, the court concludes that Maaele prevails over Gi on the issue of forcefulness, character, personality and capacity for leadership.

Maaele is the blood son of Mageo Veevalu. He has one half Mageo blood in his veins. The late Mageo Lauoi was his brother. He is the grandson of Mageo Manu. Gi is the grandson of the same Mageo Manu. He has one fourth Mageo blood in his veins. Maaele has twice as much Mageo blood in his veins as Gi and prevails over him on the issue of hereditary right.

The value of a matai to the Government of American Samoa depends mostly upon his ability to handle the affairs of his family. Such ability in turn depends upon his forcefulness, character, personality and capacity for leadership. We have said this many times in prior decisions. We believe from the evidence and our observation of the two candidates that Maaele will be of more value to the

510

Government as the holder of the Mageo title than will Gi, and we so find.

In view of our conclusion that Maaele prevails over Gi on all four issues we must under the law award him the title. Accordingly it is ORDERED, ADJUDGED and DECREED that Maaele shall be registered as the holder of the title Mageo of Pago Pago. The Registrar of Titles will be so advised.

Costs in the sum of $62.50 are hereby assessed against Gi, the same to be paid with 30 days.